UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

Elizabeth A. Sisk,                         Case No. 09-62281-wsd
                                                                          Chapter 7
           Debtor.                    Hon. Walter Shapero

_____/

ELIZABETH A. SISK,

      Debtor / Counter-Defendant

v.                                                     Adv. Pro. No. 09-05658

DAVID M. FINDLING,

      Defendant / Counter-Plaintiff.

_____/

**OPINION GRANTING PARTIAL SUMMARY JUDGMENT ON DEBTOR'S MOTION AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

This matter came before the Court upon Defendant's Motion for Summary Judgment (Docket No. 41), and Debtor's Motion for Summary Judgment (Docket No. 45). Debtor commenced this adversary proceeding with the filing of a Complaint[1] on August 05, 2009, seeking discharge of the debt owed to the Defendant. Defendant Counter-Complained, seeking nondischargeability of the debt pursuant to § 523(a)(4) and § 523(a)(5). The Court held a hearing on the summary judgment motions, and took the matter under advisement.

---

[1] In the Debtor's Complaint (seeking dischargeability of her obligations owed to Defendant Findling), Debtor stated that she believed Defendant would also seek nondischargeability of his claims pursuant to § 523(a)(15). Defendant neither admitted nor denied this in his Answer and did not seek to hold the debts non-dischargeable pursuant to § 523(a)(15) either in his Counter-Complaint, or in his cross-motion for Summary Judgment.

## I. Factual Background

David Findling ("Defendant" or "Findling") was the court appointed receiver over certain assets in divorce proceedings between the Debtor, Elizabeth Sisk, and her now former husband Glenn Sisk[2]. These assets included the business entities Belleville Chiropractic Wellness Center, PLC ("Belleville Clinic"), and Plymouth Chiropractic Wellness Center ("Plymouth Clinic"), jointly owned by the couple.

The April 25, 2006 Judgment of Divorce ("JOD") and its property division provisions between the Sisks required Glenn Sisk to pay Debtor $404,197.91 and to pay two thirds of her attorneys' fees. The state court appointed Findling as Receiver to insure and enforce timely payment of all sums due and owing to Debtor from Glenn Sisk. In pursuance of that obligation, Findling collected and remitted $199,456.03 to Debtor. This figure is not in dispute. The JOD was an effectuation of a settlement through arbitration proceedings, in which John R. Foley, was the court appointed arbitrator. Under "Spousal Support," the JOD states: "[n]either party is awarded spousal support, and spousal support is forever barred," and the JOD required each party to share equally in the receiver's fees, arbitration fees and mediation fees.

On July 20, 2006, the Wayne County Circuit Court entered an Order Terminating the Services of the Receiver for Plymouth Clinic Only, stating that the services of Findling as the court appointed receiver are terminated with respect to the Plymouth clinic[3] only.

On May 30, 2008, the Wayne County Circuit Court entered an Order whereby the Receiver, Findling, would transfer the ownership and assets of the Belleville Clinic and a

---

[2] Glenn Sisk is a party to Debtor's Complaint and he was served. He did not file an Answer. In Findling's Answer, he denies representing the interests of Glenn Sisk.
[3] Findling filed a Third Party Complaint against Plymouth Chiropractic Wellness Clinic (Docket #7) in this adversary proceeding, alleging the fraudulent transfer of the clinic to Elizabeth Sisk. An Answer was filed. The current Motions for Summary Judgment do not address that claim.

Kenworth motor home to Debtor in satisfaction of the remaining monetary obligations owed to her under the JOD. This was occasioned by Glenn Sisk's default under the JOD arising from his non-payment of obligations due March 15, April 15, and May 15, of 2008. That order also "granted the Receiver a priority claim as an administrative expense on the assets of Belleville and the Motor Home," and stated that Debtor Elizabeth Sisk would be liable for unpaid fees to the Receiver, and Glenn Sisk would continue to be liable for those fees.

On July 20, 2009, the Wayne County Circuit Court entered an "Order Re-instating Receiver" which contained "Provisions In The Event of Bankruptcy."[4] That order was entered after the July 17, 2009 filing date of this bankruptcy case, but before this adversary proceeding was filed. However, on July 31, 2009, that Order was vacated, nunc pro tunc.

Previously in this adversary preceding, on September 15, 2009, a stipulation was filed entitled, "Stipulation To Determine the Dischargeability of Receivership Fees of David Findling." The stipulation is signed only by Debtor's attorney, Charles Schneider, and by Glenn Sisk's attorney, John Thomas. The stipulation states that any obligation arising from the JOD owing between the Debtor and Glenn Sisk is not a support obligation, and is a dischargeable debt. Findling did not sign the stipulation.

Presumably incident to that stipulation, on September 15, 2009, this Court entered an Order Determining the Dischargeability of Receivership Fees of David Findling. That Order replicates the above referred to stipulation, saying that any obligation arising from the JOD and owing between the debtor and the Glenn Sisk was a dischargeable debt. The docket does not indicate that Findling had any notice of the entry of that Order. The adversary proceeding was closed on September 15, 2009, but was reopened on September 16, 2009, and thereafter

---

[4] The Provisions in the Event of Bankruptcy were extensive, and contained among several provisions, "the Court also finds that the Receiver's fees and costs are inextricably intertwined with any support obligation owed by Elizabeth Sisk to Glenn Sisk and are therefore non-dischargeable under 11 U.S.C. § 523(a)(5)."

proceeded in normal adversary proceeding fashion to its present posture. No argument is here made that the September 15, 2009 Order of this Court affects or governs the outcome of the motions currently before the Court.

## II. Analysis

Fed. R. Bankr. P. 7056 makes Rule 56 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings. Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court must view all of the facts presented by the moving party and all inferences drawn from those facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Under 11 U.S.C. § 727(b), a debtor may obtain a general discharge form all debts that arose before the order for relief. There are exceptions relevant here for debts for money obtained "by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" under 11 U.S.C. § 523(a)(2)(4), and for a "domestic support obligation" under 11 U.S.C. § 523(a)(5). The party objecting to discharge has the "burden of proving by a preponderance of the evidence that a debt is excepted from discharge under section 523(a) of the Bankruptcy Code." Meyer v. IRS (In re Meyers), 196 F.3d 622, 624 (6th Cir. 1999).

### 11 U.S.C. § 523(a)(4)

Findling seeks to except from discharge the receivership fee debt owed to him by the Debtor pursuant to 11 U.S.C. § 523(a)(4).

In order to determine a debt is nondischargeable under § 523(a)(4) where defalcation is claimed, courts generally require proof by a preponderance of the evidence of the following: 1) a fiduciary relationship; 2) breach of that fiduciary relationship; and 3) a resulting loss. <u>R.E. America, Inc. v. Garver (In re Garver)</u>, 116 F.3d 176, 178 (6th Cir. 1997). The Sixth Circuit construes the term fiduciary relationship narrowly, and essentially limits it to relationships created under express and technical trusts, as opposed to constructive trusts that courts may impose. <u>Commonwealth Land Title Co. v. Blaszak (In re Blaszak)</u>, 397 F.3d 386, 391 (6th Cir. 2005).

The argument here is initially focused on the first element, i.e.: whether the Debtor was acting in a fiduciary capacity, which turns on whether a technical or express trust was created. The burden to produce the evidence of such a trust is with the Defendant, and the Court concludes that he has not met that burden.

The Defendant claims that the May 30, 2008 Order transferring the Kenworth motor home and the Belleville Clinic to the Debtor, created an express or technical trust, if not by its specific language than by its elements. He cites <u>In re Elrod</u>, 42 B.R. 468, 473 (Bankr.E.D.Tenn. 1984) to the effect that there are no formal or technical expressions required to establish a trust, as long as the essential elements of an express trust are found to exist. The essential elements are: 1) a trustee, 2) a beneficiary, and 3) trust property. <u>Id.</u>

As noted, prior to the May 30, 2008 order, Findling was the Court appointed receiver in the divorce action between the Sisks. Clearly there was no fiduciary relationship between the Debtor and Findling before that time, and clearly, before that time, Debtor (as well as her husband) already had obligations under various previous state court orders relative to Findling's receiver's fees. It is thus only that May 30, 2008 Order that can be looked to, in that context, as

creating (or not creating) the fiduciary relationship, keeping in mind, as noted, that only an express, and not a constructive, trust will pass § 523(a)(4) muster.

The normal express trust requires a settlor who transfers property to a trustee for the benefit of another. Query: Who is the settlor here? Given that, pursuant to court order, it was the Receiver in possession of the property who was ordered to and did turn the property over to the debtor, or, the state court in so ordering? Regardless, a fair contextual reading of that Order is that specified assets of a divorcing couple were being held by a court appointed receiver pending fulfillment of certain monetary obligations of the husband to the Debtor and, when the husband defaulted, the court ordered the Receiver to turn those assets over to the Debtor in full payment of the husband's obligations. The Order states that Debtor "is now the owner of the Belleville assets and the Motor Home," and thereafter, in pertinent part, states:

> 12. Further in both the Order Appointing Receiver and the Order for Instruction, this Court granted the Receiver a priority claim as an administrative expense on the assets of Belleville and the Motor Home.
>
> 13. Therefore, Elizabeth Sisk shall be liable for the unpaid fees and costs of the Receiver as determined by this Court.

Certainly there are no express words of "trust" (though there need not be if all of the requisite trust elements are otherwise met). The creation of an "express" trust requires a trustee who holds the trust property subject to duties to deal with it for the benefit of another; a beneficiary to whom the trustee owes a duty to deal with the trust property for the benefit of the beneficiary; and an express or implied understanding that he is not to hold it as his own absolute property, but is to hold and apply it for a certain specified purposes or for the benefit of certain specified persons. See, In re Elrod, 42 B.R. 468 (Bankr. E.D. Tenn. 1984); Pierowich v. Metropolitan Life Ins. Co., 282 Mich. 118 (1937).

Paragraph 12 of the May 30, 2008 Order is simply an iteration of previous orders granting Findling priority on funds subject to the receivership for payment of the Receiver's fees, which may have been somewhat unmindfully repeated, even though the situation was concurrently changing. In the normal receivership situation, a receiver is in control or possession of property and payment of the receiver's compensation is assured because of his or her possession and control over the receivership property and the consequent ability to apply same first to the payment of the expenses of the receivership ("administrative" expenses), including the receiver's fees, before distributions to others entitled thereto. In that context, the phrase in the Order in question "priority claim as an administrative expense" on assets the receiver is in fact holding, would have obvious relevance, practical meaning, and capability of effectuation. However, where, as here, the Receiver concurrently and totally transfers ownership and possession of the property, part of which is a going business, the meaning or applicability of that phrase is much less relevant or clear, and, is, as a practical matter, much less capable of effectuation (unless one agrees with the Receiver's position that it created an express trust over the transferred property). The transfer effectively ends the receivership as to that property, essentially doing away with the relationship that makes the concept of a priority administrative claim appropriate. Giving one a "priority claim as an administrative expense" even on specified property, in this Court's view, is not the same as, nor tantamount to, saying that the transferee owner of that property now holds that property in trust for the administrative claim holder. To say otherwise, in the circumstances of this case, would in essence come too close to saying, for instance, that the relationship between a debtor and a secured party is perforce a fiduciary one created or arising out of typical instruments creating such relationships. To say otherwise would

be, in essence, trying to force a square legal peg of some other kind of relationship into an express trust round hole.

The Order in question, which recognizes then existing objections by Debtor to pay the Receiver's fees and contemplates, and provides for, future determination by the Court the amount of the Receiver's fees if the parties cannot agree to their amount. That is an open ended process that militates against a conclusion that somehow the transferred assets must be held under, or were considered as part of, a thereby created trust dedicated first to the payment of the Receiver's fees. This is particularly so where it appears that a choice was made that, instead of liquidating the assets involved and holding the proceeds, or a part of the proceeds, to secure payment of the Receiver's fees or the JOD obligation to the Debtor, the Receiver and the Court elected to transfer the assets to the Debtor, and facially at least, except for the quoted language, leave the Debtor free to deal with those assets, which, at the time, consisted of an ongoing business. Determining that an entire ongoing business is held in trust for another would also seem to require much more detail, definition, and specificity than the few words of the Order in question, i.e.: How long would the trust last? Are there any restrictions on how Debtor is to run the business? If she chose to close or liquidate it prior to final determination of the amount, what, if any, were her continuing obligations? In this Court's view, the sense, meaning, and effect of the Order is that Debtor, by reason thereof, became the sole and complete owner of the assets transferred, unrestrained, at least under express or necessarily implied terms, with regard to what she could do with those assets; though, as stated, she remained liable, as she always had been, for her share of the Receiver's fees. The Order itself contemplates or recognizes that payment of the Receiver's fees, if not otherwise satisfied, may also come from other assets, if any, that the Receiver retains possession of, and liquidates if need be, for payment of such fees. Thus, not

- 8 -
09-05658-wsd    Doc 57    Filed 02/16/11    Entered 02/16/11 14:20:47    Page 8 of 13

be, in essence, trying to force a square legal peg of some other kind of relationship into an express trust round hole.

The Order in question, which recognizes then existing objections by Debtor to pay the Receiver's fees and contemplates, and provides for, future determination by the Court the amount of the Receiver's fees if the parties cannot agree to their amount. That is an open ended process that militates against a conclusion that somehow the transferred assets must be held under, or were considered as part of, a thereby created trust dedicated first to the payment of the Receiver's fees. This is particularly so where it appears that a choice was made that, instead of liquidating the assets involved and holding the proceeds, or a part of the proceeds, to secure payment of the Receiver's fees or the JOD obligation to the Debtor, the Receiver and the Court elected to transfer the assets to the Debtor, and facially at least, except for the quoted language, leave the Debtor free to deal with those assets, which, at the time, consisted of an ongoing business. Determining that an entire ongoing business is held in trust for another would also seem to require much more detail, definition, and specificity than the few words of the Order in question, i.e.: How long would the trust last? Are there any restrictions on how Debtor is to run the business? If she chose to close or liquidate it prior to final determination of the amount, what, if any, were her continuing obligations? In this Court's view, the sense, meaning, and effect of the Order is that Debtor, by reason thereof, became the sole and complete owner of the assets transferred, unrestrained, at least under express or necessarily implied terms, with regard to what she could do with those assets; though, as stated, she remained liable, as she always had been, for her share of the Receiver's fees. The Order itself contemplates or recognizes that payment of the Receiver's fees, if not otherwise satisfied, may also come from other assets, if any, that the Receiver retains possession of, and liquidates if need be, for payment of such fees. Thus, not

only are the words of a "trust" lacking, but also lacking is sufficient evidence of any intent to create a trust or fiduciary relationship.  Since there was to be a transfer of assets, one could have easily at that time either: 1) specifically given the Receiver lien rights in the assets for his fees, or 2) specifically created a trust or fiduciary relationship with reference to the transferred assets.  Those options were either not thought of at that time or deemed not necessary for some reason, but at any rate, such was not done.  In the context of a bankruptcy case, the Court is not free to remedy the situation in favor of the Receiver by doing so.

Could the language used in Paragraph 12 be held to have created some sort of lien rights in the property involved for the Receiver's fees?  Without answering that question, it need only be said that the relationships between an obligor and a secured party on a secured debt, or even an assignee for the benefit of creditors and the creditors involved in such, however such may be classified, are not perforce "fiduciary" ones.  To be sure, there might be some "equities" in favor of the Receiver in this case, particularly if it later turns out that the Debtor's share or obligation for the Receiver's fees is discharged in this proceeding; or any other property held by the Receiver is insufficient to satisfy his fees; or the fees cannot be collected from Glenn Sisk, who is also liable for same; or the Receiver cannot recover his fees on some grounds or theory not involved in this particular proceeding.  Not only does one not know whether or not that will be the case, but regardless of any perceived equities, the Bankruptcy Court must always come back to the law under which it is bound.  Namely, that equitable considerations and notions of underlying constructive trusts; or debtor/creditor, debtor/secured party, or other such relationships that might have the general look and feel of "fiduciary" relationships in some broad, but non-legal or non-bankruptcy, sense of the term, simply do not satisfy the express trust requirements of § 523(a)(4) in this circuit.

The Defendant has thus, as a legal and factual matter, failed to establish the first element required under the defalcation provision of § 523(a)(4), i.e.: that a fiduciary relationship exists or existed between the Defendant and Debtor, and the Court need not address the other two elements.

### 11 U.S.C. § 523(a)(5)

The Defendant also seeks to except from discharge the receiver fee debt owed by the Debtor pursuant to 11 U.S.C. § 523(a)(5).

In order to determine a debt is nondischargeable under § 523(a)(5), the bankruptcy court must determine if the debt is in the nature of support. This inquiry must give proper deference to state court divorce decrees, and should not second-guess state court alimony determinations. Sorah v. Sorah (In re Sorah), 163 F.3d 397, 401 (6th Cir. 1998). The court places the burden on the moving party of proving that the debt is in the nature of alimony, maintenance, or support. Long v. Calhoun (In re Calhoun), 715 F.2d 1103, 1111 (6th Cir. 1983). Sorah does not specifically address third party debt assumption, as is the case here, but lists indicia by which to determine whether the debt is in the nature of support. They include, but are not limited to: 1) a label such as alimony, support, or maintenance in the decree or agreement, 2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and 3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. Id. at 401.

What the Court has by way of facts before it so far on this issue is:

(1) In the Property Division portion of the JOD, there is set forth the indicated $404,197.91 obligation of Glenn Sisk to Debtor with respect to which there is a provision that it is "not alimony in any form;" and, the payment of that obligation does not appear to be contingent on death, remarriage of the Debtor, or any other occurrence.

(2) Another provision of the JOD states that "neither party is awarded spousal support and spousal support is forever barred."

(3) There is also a so-called Bankruptcy Clause in the JOD stating:

> In the event that a party files a Petition in Bankruptcy, it is the decision of the Court that, based on the facts found by the entry of this Judgment, that those provisions calling for payment are in the nature of support for maintenance and support of the payee, and are therefore, non-dischargeable by a Bankruptcy filing or adjudication.

(4) There is the previously referred to Order of September 15, 2009 entered by this Court pursuant to a stipulation, signed only be the attorneys for Debtor and Glenn Sisk, saying that any obligation arising from the JOD and owing between the debtor and Glenn Sisk was a dischargeable debt. That Order was not agreed to by Findling. The adversary proceeding in which that Order was entered (this adversary proceeding) was both immediately closed and thereafter reopened, and proceeded to its present point. It appears that no one, in these proceedings at least, is arguing that the substance of that Order bears on the summary judgment motions before the Court.

(5) It would appear that it is necessarily the case that some portion of the Receiver's fees resulted from the Receiver's services in question with the May 30, 2008 Order and matters incident thereto. If that is true, query: Do such services take on the character of collection, payment, or satisfaction of obligations that the JOD says, at least in one provision, is not support? Or, what about other services not in that category, and might a result depend on the nature of the unpaid services?

It is not required that a debt be paid or payable to the former spouse to be a nondischargeable debt under § 523(a)(5). See, e.g., Long v. Calhoun (In re Calhoun), 715 F.2d 1103, 1106 (6th Cir. 1983) (Court held that debtor's assumption of joint debts with spouse owed to third parties could be nondischargeable under § 523(a)(5) if in the nature of support). However, the debt assumed must actually be in the nature of alimony or support to be excepted from discharge, because any debt assumed by one spouse indirectly contributes to support of the other by relief of payment of that debt. Id. at 1108-09. The Court must therefore look to the whether the state court or the parties intended to create an obligation to provide support through the assumption of the joint debt, if not, the inquiry ends. Id. at 1109.

Defendant is asserting a third party claim for nondischargeability pursuant to § 523(a)(5). He cites In re Kline, 65 F.3d 749 (8th Cir. 1995); and In re Wright, 184 B.R. 318 (Bankr.N.D.Ill. 1995), in which an exception to discharge is granted for those fees owed to an attorney, and Beaupied v. Chang (In re Chang), 163 F.3d 1138 (9th Cir. 1998), in which an exception to discharge is granted for those fees owed to health professionals who cared for the debtor's daughter. However, aside from whether such are consistent with 6th Circuit law, these cases are arguably distinguishable from this situation because the fees were owed either to an attorney or a health professional, as opposed to a receiver, like the Defendant. The foregoing, coupled with the indicated parameters of applicable law, lead to the inevitable conclusion that inconsistencies and ambiguities in this situation abound and present genuine factual issues of a nature and type that require a full evidentiary inquiry to reach an appropriate decision; hence, summary judgment is inappropriate.

### III. Conclusion

For the reasons set forth above, the Court is denying Defendant's Motion for Summary Judgment on the issue of nondischargeability pursuant to § 523(a)(4), and granting Debtor's Motion for Summary Judgment on that issue. The Court will deny both Defendant's and Debtor's Motions for Summary Judgment as to the issue of nondischargeablity pursuant to § 523(a)(5) as there are genuine issues of fact that preclude determination as a matter of law. The Court will be setting a status conference to discuss future proceedings in this case. Debtor shall present an order effectuating this decision.

.

**Signed on February 16, 2011**

                                **/s/ Walter Shapero**
                           **Walter Shapero**
                           **United States Bankruptcy Judge**